under the CJA, and the court appreciates your willingness to take the assignment. Oh, of course. Sorry. Sorry about that. Hang on. Sorry. May it please the court, my name is Jack Hathaway and I am here for the appellant. The government should have just asked for a continuance. Even in a supervised release revocation hearing, my client has rights. The government is supposed to produce the witness for its allegations. The government didn't, and rather than simply asking for a continuance to do so, the government tried to bypass my client's confrontation rights. Under Bell, the government has to show two things. It has to show that it was impractical or undesirable to produce its witness, and that the hearsay evidence it is trying to present is reliable enough to outweigh my client's confrontation rights. It was perfectly practical to produce Ms. Berry as a witness. According to the government's own evidence, she had provided an address less than three weeks prior to the hearing. This address was within the district, and it was within an hour and a half from the courthouse. The cases where the court found it impractical to produce the witness, like Harrison or Protzman, are a thousand miles away from this case, like the witnesses were from the courthouse. What about the timing? I understand that parties submit issues of dispute, what, three days in advance of the hearing? Is that correct? I believe so, Your Honor, and I saw that argument in the government's brief, but the government should not be relying on a notice of contested issues that we timely filed to provide them notice to prepare their case. There was a detention hearing prior to the revocation hearing, correct? There was. And was this issue in dispute? This issue was in dispute. Well, we were challenging it as is. So there wasn't any admission to, obviously, this assault? Not at all. All right. Going back to the practicality, this case is like Sutton, despite there actually being probably a better argument for it being impractical in Sutton than here. In Sutton, they were trying to bridge the testimony of three different witnesses, and it was about an assault that was alleged to have occurred more than a year prior to the hearing. And in this case, we have an alleged crime alleged to have occurred only three weeks prior to the hearing, and like in Sutton, it was well within the district of the courthouse. The government's argument seems to be that it was impractical to produce the witness simply because it didn't manage to serve the subpoena, but that argument was insufficient in Sutton, and it's insufficient here. The government does not allege that it served the subpoena. The government does not allege that there was an attempt made to serve the subpoena until the day before the hearing. The record reveals little even about an attempt being made to serve the subpoena the day before the hearing. The officer the government put on the stand did not serve the subpoena, had no personal knowledge of an attempt to serve the subpoena being made, and he equivocated about the hearsay that he had to make him believe that someone had attempted to serve the subpoena the day before the hearing. Now the government... Well, let me ask you about that. In your brief, you quote language from the witness about the person understood that an attempt had been made. The witness in that case is the officer, correct? Yes. Was there any other evidence other than what's quoted in your brief as to whether any attempt was made to actually serve the subpoena? I don't believe there was any evidence submitted about the attempt to serve aside from the officer's testimony that day. On appeal, the government argues that... Well, it now argues that it was undesirable to produce Ms. Berry as a witness, but this runs contrary to what it argued at the revocation hearing and the other argument that it presents, that it wanted to produce Ms. Berry at the revocation hearing but simply wasn't able to. The government tried to get the same ad hoc reasoning in in Sutton, and the court found it unpersuasive there, and it should find it unpersuasive here for almost the same reasons, although I think in our case we actually have a stronger case than there was in Sutton, again. In Sutton, there was... Well, to start, it's a completely speculative argument, just like it was in Sutton. We do not know if Ms. Berry would have refused to testify because she was never served with a subpoena, so she was never given the opportunity to refuse or not. And then in Sutton, you at least had some indication in the record of one or more of the witnesses being uncooperative in a parallel proceeding to the revocation hearing. Here, there is no such evidence. There's no parallel proceeding. There's no evidence of Ms. Berry ever being uncooperative in any proceeding whatsoever. And in Sutton, in the hearsay evidence, there was at least an indication that the witness had feared the defendant in the revocation hearing, but here there is no such evidence in the record, hearsay or not. And the hearsay evidence, I believe, actually states that Ms. Berry does not fear Mr. Timmons. The government also failed to show the requirement that the hearsay be sufficiently reliable to outweigh Mr. Timmons' confrontation rights. Unlike the government, the defendant produced two witnesses on the day of his revocation hearing, both of whom were subject to cross-examination, and both of whom contradict the most relevant portions of Ms. Berry's hearsay statements. Ms. Berry's statements were on video, though, right? Audio and video. So does that increase the reliability of her statements if you can actually see it and it's not coming through a report from the officer? I suppose it could, but I don't think by any means markedly enough to make it outweigh my client's confrontation rights in this case. There were photos, too, weren't they, that corroborated the hearsay videos? There were photos of someone claimed to be Ms. Berry's face. Three of them were blurry. One of them was supposed to depict an injury. But yes, those were in the record. What was the time frame between the 911 call and when the officer actually took the video statement that was introduced into evidence? I believe it was between three and three-and-a-half hours. Ms. Berry, as we explained in our brief, Ms. Berry already had a conviction for lying to the police. The district court tried to dismiss this fact as distinct because she had been talking about a different subject matter when she lied to the police the first time. But the conviction goes to the very core of the reasons why the district court was finding the hearsay evidence reliable. The district court concluded that because she was talking to the police and because she could fear punishment about lying to the police, that it made her statements more reliable. But talking to the police did not stop her from lying the first time. And the only, as far as we're going to speculate into her head, fear of punishment for lying to the police, the only thing in the record we have to indicate any punishment that she would fear would be the punishment she received for the conviction of lying to the police, which was a nominal fine and not much of a deterrent. I have come up past the time I want to reserve for what else I could. You may reserve the rest. Thank you. Ms. Williams. Good morning, Your Honors. Lisa Williams here, appearing on behalf of the United States of America. I want to correct the record on a few of the questions that came from the bench, starting with the time frame between the 911 call and when police interviewed her. The first 911 hang-up call took place at approximately 5.50 p.m. Approximately two hours later, they received the 911 text with the address of where to come, and the video interview took place somewhere between two to three hours from that very first 911 hang-up call. So the longest kind of stretch of time that we're talking about between the initial reach-out to police and the video interview is three hours, not three and a half to four hours, and that's in the record on pages five to six. Well, let me tell you what bothers me about this case is that two things. I don't want to overgeneralize, but turbulent domestic relations situations are ones that are rife for people saying things that aren't true about a person that they're having a fight with. And then secondly, she's already got a conviction for lying to the police. That's the one that really, I think, is really by far the most troubling to me, that if you've got somebody who's already been convicted of lying to the police, you better darn well better produce that person as a witness. And it wouldn't have been that hard to get a continuance to do it. So I would push back on the first premise. I don't think that women lie about domestic abuse. I don't think that that's proven. I'm not saying women lie about domestic abuse. I'm saying that people and men do, too. I mean, I think domestic relations situations, there's a potential there for that. And again, I think that if you look at overall statistics, domestic abuse is wildly unreported. It is not over-reported, and it is not exaggerated when it is reported. If anything, women don't call the police when their partners hit them. And so that is not a concern. Now, addressing the continuance issue, that's the other thing that I wanted to get to is the overall timing that Judge Kelly brought up. The second petition was filed on April 17th, and that was the first time that this new law violation was alleged, April 17th. Two days later, the defendant appears for his detention hearing. And I will say I don't think that counsel had notice of the second petition until the detention hearing because it was sealed and there was the arrest worn out for him. But on April 19th, defense counsel becomes aware of this new law violation. They wait 11 days to provide notice that they're going to contest this issue. But this is a state law violation. I would be very surprised if, one, any defendant would admit to a state law violation in a federal revocation hearing, or, two, that the government wouldn't understand that it's very unlikely that a defendant is going to admit to a state law violation. Which I think is the highest grade violation that was alleged, was it not? Yes. In this case, I still think it's just a B. I don't think it was an A. So that's what threw me for a second. But you are correct, Judge Kelly, that the highest grade violation in this specific petition was the state law violation. I'll say defendants come in all the time and do Alfred Preeley's at a revocation to a state law violation. I think that the power of the federal government to compel witnesses is much different than the state power. And strategically, defendants make a decision that they don't want to fight these issues in federal court, that they'd rather go back to state court where maybe they'll get a better plea deal, maybe the state doesn't have quite the hammer that the federal government has. So, again, I would push back on that notion that all the time that it's going to be contested. But as soon as the government became aware that this was a contested issue, the government put into action efforts to subpoena Ms. Berry to the revocation hearing. Will you explain more in the details on that? You say put into action. So the new petition to revoke was filed on the 19th. Notice was provided 11 days later. Is that accurate? That's correct, on April 30th, Your Honor. On April 30th. And what did the government do on April 30th? So April 30th was a Tuesday. So on Tuesday, I had my office prepare the subpoena and figure out who needed, who was the case agent at the Dubuque Police Department. Wednesday morning, I emailed the subpoena to the officer who wrote the report. And part of that is my, I didn't understand that he was the training officer. Because he was the officer who wrote the report, I assumed that he was the main officer. Because he was the training officer, and this is all in the record. I did a proffer before the district court. Because he was the training officer, he was out at training. And he did not receive my email. I did not receive a response from him of any type on Wednesday. So Thursday morning, I called over to the Dubuque Police Department and I said, what is going on? I need the subpoena served. Where is this officer? He hasn't responded. And that's when they said, he is out at training. He didn't get your email. We will take the subpoena. I talked to one of the lieutenants. We will take the subpoena and get it served. And that's on Thursday. They went out and they made at least one attempt to locate Ms. Berry at her residence, where the assault took place, and serve the subpoena on her. But when they made at least one attempt, and that's unclear if they made one, or excuse me, more than one. But what is clear is they made at least one attempt to serve her at her home. They could not locate her to serve her with the subpoena. And then the hearing was the next day. Yeah, the government could have asked for a continuance. I'm not going to say, no, we couldn't have asked for a continuance. But under Bell, we don't have to ask for a continuance. Because there are times when hearsay is allowed at a revocation hearing, and a defendant's confrontation rights are not violated. But you've just jumped to the reliability. So you can have a decent argument that maybe this was well within the time period of the 911 call. We've got a video. You can make a number of arguments about reliability. But I don't think that that goes to whether it was impractical or inadvisable to get her in person. Those are separate arguments. But it's not an either or. I would submit that it's a balancing the totality of both of those. What is the government's excuse? And is it sufficiently reliable? And that's really – and I'm not going to talk too much about Sutton, because I know the court is very familiar with Sutton. But that's how Sutton is distinguishable here. Is in Sutton, the court really said, you didn't make any attempts. Or your attempts weren't great. And that's problematic. But equally problematic is that the evidence that you seek to introduce is not reliable. This case is distinguishable because the evidence in this case is reliable. It does have indicia of reliability associated with to temper and kind of balance out the issues with the government excuse for not calling. So you're saying a reliability can make up for lack of effort? Yes, Your Honor. It seems like our case law says you have to have both. I don't know that I've read in the bleeding that you've said. Can you point me to some language where we've said that you have to have both, but one can influence the other? I mean, I would argue that the way that Sutton reads supports that. I mean, that Sutton, if it was only one, if it was just the government didn't try at all and that's that, then the Sutton opinion would have ended there. But Sutton also goes to the second step and analyzes it under the reliability and looks at it at both ways. I would also say another context, and I didn't cite these cases in my brief, but Dr. Khadijian is the sweat patch guy, and he travels around the country. And the Myers case, which is old, talks about his reliability. And there's a more recent case that came out, but the government doesn't call Dr. Khadijian because it's too expensive. I mean, he's expensive, he's not here, he's out. But we could. We could in every case, but we don't have to because his testimony is so reliable, because we know what he's going to say. And so I guess that would be another example of sometimes when testimony is so very reliable and we just know we trust it enough, that does excuse. Is that sort of scientific testimony that is applicable in any situation, or are you talking about testimony about a particular sweat patch? That seems to be different. Kind of. I mean, I'm talking about the broader scientific testimony, but the analysis is the same, right? I mean, we believe that that evidence is so reliable that we don't need the government to proffer a reason, really, other than it's too expensive. But in those cases, he has testified and he's been subject to cross-examination. So you have that, and you also don't couple it with the fact that she previously was convicted of lying to them. If the doctor had previously been convicted of lying to the police, I think you'd have a whole different case. And I didn't get a chance to address that. The district court was aware that she'd been previously convicted and did put on the record why he found that the court believed that her statement was still reliable and thought about those issues. And so the government's position is the district court did not abuse its discretion because it factored that in. It's not a situation where that just flew over the district court judge's head and didn't pass it. But I see that my time is out. Thank you. Thank you. Mr. Hathaway? Just to address a couple things that came up in that argument. You do have to have both. In Sutton, court stated that you had to have the undesirable and practical aspect of it, and you did have to have the reliability of the evidence to outweigh the confrontation rights of the defendant. And the court stated it the same way in Farmer, or at least substantially. It said it was an adjective test that you had to have both. This falls from Bell in which, although it's less clearly stated in that way, with both the impracticality and desirability aspect and the reliability aspect, both are set as being weighed against the confrontation rights and not against each other. And then you have ZentGraph where they apply it as an elements test because in that case they had reliability on the evidence, but they still did not allow it in because the impracticality element was not shown. The other aspect, this is just something that we did not emphasize enough, I think, in the reply brief, and I wanted to get it into the record, is that with the arguments that are being made about the reliability of the evidence as to domestic assault, it kind of bypasses an aspect of this case, which is that the domestic assault wasn't a B violation. The domestic assault allegation was not a B violation. Only the child endangerment allegation was a B violation. The government had to show two things. It had to show because it only had one theory and one allegation for child endangerment, and that was that a domestic assault had been committed and this had been done in front of children. And the government does not even propose an argument for corroborating the child aspect of this. The only thing in the record at this point for it is a fleeting allegation made in the hearsay evidence. That's the end of my time. Thank you. Thank you to both counsel for your arguments and your briefing, and we'll take the matter under advisement.